OPINION
Appellant-defendant Tristine King appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of murder with a firearm specification. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On June 11, 1995, DeShawn Jackson died of hypovolemic shock which was the result of a loss of blood caused by a gunshot wound to the abdomen. DeShawn sustained the fatal wound during an incident at the Bonded Gas Station on East Tuscarawas Avenue, Canton, Ohio, on May 5, 1995. Appellant was implicated as the perpetrator of the crime.
On November 3, 1995, a Stark County Grand Jury indicted appellant on one count of murder with a firearm specification.
The case came to trial before a jury on October 28, 1996.[1] At trial, Devon Jackson, DeShawn's cousin, testified that at approximately 7:00 p.m. on May 5, 1995, he and DeShawn drove into the Bonded Gas Station on East Tuscarawas Avenue. DeShawn remained in the vehicle while Devon proceeded to the cashier window.
Devon stated he observed a blue car pull up and park along Young Street. Thereafter, two individuals, carrying guns, exited the blue vehicle and approached DeShawn. At the time, Devon did not know who these individuals were, but later identified them, through photographs and information obtained from his cousin, as appellant and Anthony Moore. A third individual, who Devon later learned was Keith Travis, joined appellant and Moore, who were embroiled in an argument with DeShawn. As DeShawn exited the vehicle and backed his way towards his cousin at the cashier's window, the three men continued to argue with him. Although the men continued to argue, appellant and Moore put away their guns. As DeShawn walked back to Devon's car, Travis instructed appellant and Moore to pistol whip him. Upon hearing Travis' command, DeShawn ran across Tuscarawas Avenue with appellant and Moore in pursuit. As Travis jumped into the blue car, Devon struggled with him momentarily, trying to grab him out of the vehicle.
Upon hearing a gunshot, Devon ran across Tuscarawas Avenue towards his cousin and observed appellant point his gun and fire two shots at DeShawn. Devon testified appellant and Moore fled the area on foot while Travis left in the blue car. A passing motorist in a white vehicle aided DeShawn and brought him to the emergency room at Timken Mercy Medical Center.
Later that evening at the hospital, Devon gave police officers a description of the suspects, however, at the time, he did not know their names. Devon explained DeShawn revealed the identity of the men to him the following day.
On cross-examination, Devon testified that he observed Moore in possession of a black .9 millimeter handgun during the incident while appellant carried a chrome .38 caliber handgun. Initially, in June, 1995, Devon had identified Moore as the perpetrator carrying the .38 caliber handgun. During his cross-examination, Devon explained he had confused Moore and appellant during the photo identification because the pictures gave no statistical information.
In exchange for more lenient sentences, Keith Travis and Anthony Moore testified on behalf of the State. Travis testified that he and appellant, whom he had known for ten years and with whom he was living at the time of the incident, were on their way to a friend's house when they picked up Anthony Moore. As the trio passed the Bonded Gas Station, Travis testified that appellant and Moore jumped out of his still moving vehicle. Travis explained initially he did not understand their actions, but, upon observing DeShawn, he understood his friends' behavior. Travis parked his car on Young Street and followed the other two toward the gas station.
Travis continued that after words were exchanged between the men and DeShawn, DeShawn, who was sitting in the passenger seat of a vehicle parked at the pumps, exited the vehicle. A heated discussion ensued regarding the three men's belief that DeShawn was responsible for shooting Travis' sister. During the confrontation, DeShawn started to walk backwards towards the cashier window. Eventually, the group returned to Devon's car. By this time, appellant and Moore, who were brandishing guns, had put their weapons away. Travis noted that DeShawn did not have a gun.
After Travis instructed appellant and Moore to pistol whip DeShawn, DeShawn ran across Tuscarawas Avenue. Appellant and Moore chased after DeShawn. After the three were out of his sight, Travis testified he heard a couple of gunshots. Travis was unable to identify who shot DeShawn, however, he identified appellant as having a black revolver and Moore as carrying a black automatic.
Travis testified, after the shooting, he left the scene alone. Several minutes later, Moore arrived at Travis' house. Subsequently, Travis noted that he did not see Moore with his gun after the incident and Moore would not reveal the whereabouts of the weapon. Travis did not see appellant again until the week before trial.
During his testimony, Anthony Moore explained that on the day of the incident, he had just departed from his daughter's house when he observed Travis and appellant driving down Georgetown Road. Moore flagged down Travis and appellant. Moore testified that on the way to his house, the three passed the Bonded Gas Station. Upon observing DeShawn, Travis parked his car. After the three exited the vehicle, Travis and appellant confronted DeShawn about DeShawn's shooting of Travis' sister. Moore, who was with Travis' sister on the day she was shot, could not understand the accusations because he did not believe DeShawn was the shooter. Moore testified when appellant pulled out a black revolver, Travis ordered DeShawn pistol whipped. Thereafter, DeShawn ran towards Tuscarawas Avenue. Moore testified only appellant pursued DeShawn. After hearing one gunshot, Moore ran to the corner and observed appellant shoot DeShawn twice more. After observing appellant flee from the scene, Moore returned to Travis' car. Moore stated that he and Travis left the scene and returned to Moore's house. Although he was carrying a gun on the day of the incident, Moore stated that the weapon never left his pants pocket. Moore claimed he discarded his weapon two weeks after the incident.
Donald Toulson, who was across the street from the Bonded Gas Station using a pay phone when the incident transpired, testified he observed two men exit a vehicle and approach the passenger of a car parked at the gas pumps. Although Toulson could not hear the discussion between the men, he deduced from the body language of the group that a fight would ensue. Thereafter, Toulson observed the passenger exit the vehicle and walk with his hands up backwards toward the cashier window. Several minutes later, Toulson observed the passenger returning to the vehicle, however, prior to reaching the car, the passenger ran down Tuscarawas Avenue. Thereafter, Toulson witnessed the two other men chasing the passenger. After hearing someone say, "Shoot the son-of-a-bitch," Toulson noticed that one of the chasers was brandishing a gun. Although he heard gunshots, Toulson did not actually see the shooting.
After hearing the shots, Toulson observed the passenger, who was sitting on a curb, holding his stomach as the chasers ran down an alley. Thereafter, a driver of a white vehicle picked up the victim and left the scene. Toulson continued his telephone conversation for about 15 to 20 minutes. After leaving the area, Toulson came across a patrol car and advised the officers of the recent events.
Canton Police Officer Daniel McCartney, who responded to the scene, testified he was unable to locate any witnesses or physical evidence of the shooting. After learning that the victim was at Timken Mercy Hospital, Officer McCartney proceeded to the hospital and spoke with DeShawn. At that time, DeShawn informed the officer he had been shot with a revolver. However, Officer McCartney was unable to obtain the names of any suspects.
Sergeant Lester Baroni of the Canton Police Department was assigned to the case on June 12, 1995, the day after DeShawn died. As part of his investigation, Sgt. Baroni compiled a photo lineup to present to Devon. On August 16, 1995, Devon identified a picture of appellant as the individual who shot DeShawn. Baroni also testified Devon identified Keith Travis and Anthony Moore as the two other individuals involved in the incident. Baroni noted that Devon identified Anthony Moore as also having a gun during the incident.
Larry Leslie, who was a detective with the Canton Police Department on May 5, 1995, testified he spoke to DeShawn and Devon at the hospital on the evening of the shooting. DeShawn gave Detective Leslie a brief description of the perpetrators and the location of the crime. Devon also gave the detective a description of the offenders. Upon inspecting the crime scene, Leslie could not locate any physical or blood evidence.
Approximately four or five days after the shooting, Leslie returned to the hospital and again spoke with DeShawn. Although DeShawn could not identify who the suspects were, he described the individuals as three black males. After DeShawn's death on June 11, 1995, the Canton Police Department received an anonymous phone call regarding two of the individuals involved in the shooting. Thereafter, Leslie contacted Devon, who was able to name the suspects. Based upon the information from Devon, Leslie obtained arrest warrants for appellant, Keith Travis and Anthony Moore.
Dr. Roberto Ruiz, a forensic pathologist and a Deputy Coroner for Stark County, testified the cause of death was hypovolemic shock, which is acute cardiac failure caused by a loss of blood. Dr. Ruiz concluded that the hypovolemic shock was the result of a gunshot wound to the abdomen.
Michael Short, a criminologist with the Stark County Crime Lab, testified he analyzed three bullets in connection with this case. Short concluded all three bullets were .38 caliber, fired from a revolver. Short added all three bullets were discharged from the same gun, which was an operable firearm.
Appellant presented no evidence at trial.
After hearing the evidence and deliberations, the jury found appellant guilty of murder and found appellant used a firearm in the commission of the offense. Thereafter, appellant was sentenced to three years on the firearm specification to be served prior to and consecutive with an indeterminate term of incarceration of fifteen (15) to life for the murder conviction.
It is from the conviction and sentence appellant prosecutes this appeal raising as his sole assignment of error:
 THE JURY VERDICT FINDING APPELLANT GUILTY OF MURDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
Herein, appellant asserts the verdict is against the manifest weight of the evidence.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction. State v. Thompkins (1997),78 Ohio St.3d 380, 387 citing State v. Martin (1983), 20 Ohio App.3d 172,175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
Appellant places great emphasis on the inconsistencies between the testimony of Devon Jackson, that of Keith Travis, and that of Anthony Moore. Although appellant submits that all three witnesses were lying, appellant particularly takes issue with Moore's account of the details of the events of May 5, 1995. Despite these inconsistencies, we cannot conclude the verdict is against the manifest weight of the evidence. The trier of fact was free to accept or reject all or any part of the testimony of the witnesses and access the credibility of those witnesses. Even if the jury had completely disregarded the testimony of Anthony Moore, the testimony of the remaining witnesses still provides sufficient circumstantial evidence to support the verdict. Upon review of the record and the facts noted supra, we find the evidence was sufficient to support the jury's verdict.
Appellant's sole assignment of error is overruled.
The judgment of the Stark County Court of Common Pleas is affirmed.
Hoffman, J., Farmer, P.J. and Reader, J. concur.
[1] After the shooting appellant fled the State. On September 8, 1996, the Canton Police Department with the assistance of the FBI located and arrested appellant in Birmingham, Alabama.